Filed 8/7/26  Van Bui v. Tran CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THANH VAN BUI et al.,<br><br>    Plaintiffs and Respondents,<br><br>        v.<br><br>HAI TUAN TRAN et al.,<br><br>    Defendants and Appellants. | G065617<br><br>(Super. Ct. No. 30-2022-01261310)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Lee L. Gabriel, Judge. Affirmed.

Mark S. Rosen for Defendants and Appellants.

Dhillon Law Group, Brandon Q. Tran and Karin M. Sweigart for Plaintiffs and Respondents.

\*          \*          \*

Defendants Hai Tuan Tran, Thanh Ngoc Truong, Minh Thanh Tran, and Chut Van Le appeal from a judgment in favor of plaintiffs Thanh Van Bui, Lan Thi Do, Trung Dien Doan, Hai Thi Nguyen, Hang Nguyen, Ngoc Kim Nguyen, Thanh Duc Nguyen, and Tan Huu Tran. The underlying action arose from a dispute over the governance and finances of a Vietnamese Cao Dai temple. Following a bench trial, the trial court found defendants were liable for various claims, including breach of fiduciary duty and defamation.

Defendants challenge the judgment on several grounds. First, they contend plaintiffs lack standing to assert derivative claims on behalf of the temple. Second, they argue the court improperly placed the burden to account for financial transactions on them. Third, they suggest there is insufficient evidence they misappropriated the temple's funds. Fourth, they claim the court erred by finding them liable for defamation. Finally, they argue the judgment is an improper personal judgment in plaintiffs' individual favor on the derivative claims.

For the reasons *post*, we disagree with defendants' contentions and affirm the judgment.

FACTS

I.

THE FIRST AMENDED COMPLAINT

In 2022, plaintiffs filed the operative first amended complaint (FAC) against defendants and alleged six causes of action: (1) breach of fiduciary duty; (2) constructive fraud; (3) waste of corporate assets; (4) accounting; (5) removal of directors pursuant to Corporations Code section

2

304[1]; and (6) defamation. Plaintiffs asserted the first five causes of action derivatively on behalf of Dai-Dao Tam-Ky Pho-Do, Toa-Thanh Tay-Ninh (the Corporation or the temple). According to the FAC, the Corporation is a non-profit public benefit corporation formed in 1998 for the purpose of promoting Cao Dai, a Vietnamese religion. The Corporation's primary asset is a Cao Dai temple located in the city of Garden Grove.

Among other things, the FAC alleged defendants were members of the Corporation's board of directors (the Board) or officers who owed fiduciary duties to the Corporation and its members. Defendants purportedly breached their fiduciary duties by wasting the temple's funds, misappropriating funds for their own benefit, authorizing illegal transactions, failing to maintain books and records, violating the Corporation's bylaws, and refusing to disclose information about the Corporation's operations or funds.

After plaintiffs began to question defendants' actions, defendants allegedly changed the locks to the temple. Temple members protested being locked out, and two defendants accused "a group of members, clearly understood . . . to be referring to [p]laintiffs" of causing trouble and committing burglary.

The FAC further alleged defendant Hai Tran publicly accused plaintiff Bui of instigating upheavals while defendants' counsel claimed plaintiffs acted on behalf of the communist government in Vietnam. The FAC likewise alleged "[d]efendant Nhan The Hoa, on behalf of the Board of Directors . . ., participated in an interview with . . . a local Vietnamese

---

[1] All further statutory references are to the Corporations Code unless otherwise stated.

language media figure, to falsely accuse [p]laintiffs of being agents of the government-created 1997 Sect, attempting to turn the Cao Dai Temple over to the communist government, and conspiring to illegally overthrow [d]efendant Chut Van Le from his position as Parish Chief." Defendant Hoa also "called on Cao Dai followers the world over, including the United States and Vietnam, to 'boycott' [p]laintiffs from the Cao Dai faith." The FAC alleged these statements, which characterized plaintiffs as communists, were false and defamatory in the Vietnamese-American community.

II.

THE BENCH TRIAL

In 2024, the matter proceeded to separate bench trials on liability and damages.

A. *The Corporation's Receipt and Handling of Funds*

According to trial testimony, the Corporation raised money by selling vegetarian food and receiving donations from believers. The money would then be placed in a locked box. After someone opened the locked box once a week, a defendant who is not a party to the instant appeal would document the money in a ledger or log and give the money to defendant Truong for processing. Defendant Truong would sign the ledger or log and then put the money in his personal bank account, at his residence, or into a bank account in the Corporation's name. The Board allowed defendant Truong to keep money in his personal bank account, but they never formally voted on the issue. Defendants never produced the ledger or log documentation to plaintiffs.

Defendant Truong maintained a monthly spreadsheet detailing how much money was collected, the Corporation's expenses, and how much

4

money he kept in the various accounts. Defendants Truong, Hai Tran, and Minh Tran also prepared annual spreadsheets.

*B.  Defendants' Questionable Financial Transactions*

Defendant Truong purportedly paid $144,000 from the Corporation's funds to purchase cemetery plots for the Corporation. He testified he paid for the plots with two checks in the amounts of $34,000 and $50,000 along with $60,000 in cash. The two checks were made payable to two unknown individuals and not to any cemetery.

There also was evidence defendant Truong commingled the Corporation's funds with his own funds in a personal savings account. He withdrew large sums of money from the savings account for personal expenses, including the purchase of a vehicle. His wife likewise withdrew money from the savings account.

In March 2020, the Corporation purchased land next to the temple. After the purchase, there was around $78,000 remaining in defendant Truong's savings account as of May 2020 and around $33,000 as of June 2020. The remaining funds were never transferred to the Corporation.

There was further evidence defendant Truong deducted certain expenses of the Corporation twice—once from the Corporation's bank account and a second time from the cash he kept at home. As a result of the double deductions, he conceded the Corporations' funds were not accounted for in the financial records.

Finally, there was evidence defendants used $204,900 of the Corporation's funds to pay the attorney's fees they incurred in the litigation in violation of the Corporation's bylaws.

*C. Plaintiffs' Role in the Temple*[2]

Plaintiff Bui testified he was 70 years old and had obtained a music director degree from Vietnam. He was recruited by a group of defendants to join the temple as its music director. His duties were to teach and train three sections of the religious administration committee: ritual, music, and choir. If those sections performed well, the temple would receive more donations. According to plaintiff Bui, all the other plaintiffs worked under him within the ritual section of the religious administration committee.

Plaintiff Hai Thi Nguyen testified she was 73 years old and a member of the temple since 2004. She was head of the religious administration committee. As part of the committee, she "help[ed] with all the ceremony, funeral, [and] praying for the deceased." For a few years, she also was a supervisor of the fundraising committee. She donated $6,000 to the temple along with $100 every month, and she prepared food in the temple's kitchen, which was then sold to raise funds for the temple.

Plaintiff Tan Huu Tran testified he was 73 years old and a member of the temple since 2004. His wife was plaintiff Hai Thi Nguyen. When asked about his contributions to the temple, he testified he was "deputy of religious administration" and was responsible for taking care of the temple's public works, maintenance, and security. He donated $6,000 to "purchase . . . materials to build" the temple and further donated $100 every month to the temple. His family also helped prepare food and refreshments

---

[2] We summarize the testimony of only those plaintiffs who are parties to the instant appeal.

for the temple. He further testified he lived on the temple grounds for three weeks of every month before defendants changed the locks.

Plaintiff Trung Dien Doan testified he was 61 years old and was involved with the temple for a short period in 2014 and later in 2019. He was secretary of the religious administration committee and was responsible for maintaining records and minutes for the committee. He also donated money to the temple and previously served as chairman of the board of directors of another Cao Dai temple.

Plaintiff Thanh Duc Nguyen testified he was 57 years old and was a member of the temple since 2004. He was chief administrator of the temple and a member of the religious administration committee. He donated $100 every month for a few years. He also loaned $2,000, $6,500, and $8,000 to the temple on three separate occasions.

Plaintiff Lan Thi Do testified she was 74 years old and became a member of the temple in 2008. She was chief administrator of the religious administration committee, and she purchased ingredients used by the temple's kitchen to prepare food for fundraising purposes. She also donated money to the temple.

Plaintiff Hang Nguyen testified she was 77 years old and a member of the temple since 2009. She provided translation services for guests visiting the temple and prepared food that was sold to raise funds for the temple. She also was a member of the religious administration committee.

Plaintiff Ngoc Kim Nguyen testified she was 79 years old and a member of the temple since 1997. She served as the temple's financial secretary until 2007 and was a member of the religious administration committee. She also donated $50 to the temple every month.

## III.

### THE COURT'S COMMENTS AFTER TRIAL

After hearing the evidence, the court found three defendants, Hai Tran, Minh Tran, and Truong (the Core Board Defendants), completely failed to comply with the Corporation's bylaws. The Core Board "ruled answerable only to itself." The court generally did not find defendants' testimony to be credible. But it did find plaintiff Bui to be credible.

The court added: "The books kept in this case are a mess. And the excuses made for this mess of the books in this case is just not credible." According to the court, it could not determine what funds the Corporation received and could not rely on the monthly statements because they did not reflect a true accounting. Instead, the court believed the statements were made in anticipation of litigation and highlighted "defendants' realtime shifting defense in anticipation of what they heard in the trial itself." The court then detailed how defendants breached their fiduciary duties and misappropriated specific funds.

## IV.

### THE COURT'S STATEMENT OF DECISION

In March 2025, the court issued a written statement of decision. First, the court held six of the plaintiffs had standing to assert derivative claims because they were members of the Corporation and satisfied the requirements of section 5710, subdivision (b). In finding they were members, the court emphasized the six plaintiffs joined the Corporation before 2010 and consistently donated their time and money. The court also noted another judge already determined three of the plaintiffs were members of the Corporation because the judge issued a writ of mandate allowing those

8

plaintiffs to inspect the Corporation's records. The court found "this is the law of the case."

Second, the court held the Core Board Defendants breached their fiduciary duties and misappropriated funds. As a result of their breaches, the Core Board Defendants were jointly and severally liable for $916,117.46 in damages.

Third, the court found the Core Board Defendants had the burden to provide an accounting. The court held they failed to do so because they did not present any credible evidence that: (1) $144,000 was used to purchase cemetery plots; (2) they were authorized to use the Corporation's funds to defend themselves in the action; (3) defendant Truong deposited personal funds into his savings account and only withdrew his personal funds; (4) double deducted expenses were returned to the Corporation; (5) funds remaining in defendant Truong's account after the Corporation purchased land were defendant Truong's personal funds; (6) funds identified in a 2021 tax return were returned to the Corporation; or (7) funds deposited in defendant Truong's account after June 2020 were returned to the Corporation.

Fourth, the court removed the Core Board Defendants as directors of the Corporation and barred them from reelection for the next eight years or two election cycles.

Finally, the court held plaintiff Bui established a claim for defamation per se against defendants and found defendants jointly and severally liable for $226,200 in damages. The court also awarded punitive damages against each defendant in amounts ranging from $500 to $20,000.

In April 2025, the court entered judgment consistent with the statement of decision. Defendants timely appealed.

9

DISCUSSION

I.

PLAINTIFFS HAVE STANDING TO BRING DERIVATIVE CLAIMS

Defendants argue plaintiffs do not have standing to assert derivative claims on behalf of the Corporation. First, they claim plaintiffs did not satisfy the requirements for membership set forth in the Corporation's 1999 bylaws. Second, they insist plaintiffs' service on committees did not confer standing.

Because defendants did not include the bylaws in the record on appeal and do not cite relevant portions of the record, we cannot adequately address their arguments.

*A. Applicable Law and Standard of Review*

"[T]he Nonprofit Corporation Law [(NPC)] establishes the basic corporate law applicable to all legally cognizable nonprofit corporations[,]" including public benefit corporations and religious corporations. (*California Dental Assn. v. Delta Dental of California* (2025) 115 Cal.App.5th 142, 166–167 & fn. 12.) Part 2 of the NPC addresses nonprofit public benefit corporations (§§ 5110–6910) while part 4 addresses nonprofit religious corporations (§§ 9110–9802). As pertinent here, the parties stipulated the Corporation was "organized under the Nonprofit Public Benefits Corporation Law." We accordingly apply part 2 of the NPC to the instant appeal.[3] (§§ 5110–6910.)

---

[3] Defendants cite to both parts 2 and 4 of the NPC, but they do not argue part 4, which governs nonprofit religious corporations, must apply. We apply part 2 given the parties' stipulation.

10

Section 5330 allows a nonprofit public benefit corporation to "issue membership . . . as authorized by its articles or bylaws." Per section 5056, subdivision (a) a member is "any person who, pursuant to a specific provision of a corporation's articles or bylaws, has the right to vote for the election of a director or directors or on a disposition of all or substantially all of the assets of a corporation or on a merger or on a dissolution . . . [or] has the right to vote on changes to the articles or bylaws." "The articles or bylaws [also] may confer some or all of the rights of a member . . . upon any person or persons who do not have any of the voting rights referred to in subdivision (a)." (§ 5056, subd. (b).)

Section 5142 provides that a "corporation, or a member in the name of the corporation pursuant to [s]ection 5710" "may bring an action to enjoin, correct, obtain damages for or to otherwise remedy a breach of a charitable trust." (§ 5142, subd. (a) (1).) Section 5710, in turn, states: "No action may be instituted or maintained in the right of any corporation by any member of such corporation unless both of the following conditions exist: [¶] (1) The plaintiff alleges in the complaint that plaintiff was a member at the time of the transaction or any part thereof of which plaintiff complains; and [¶] (2) The plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and alleges further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file." (§ 5170, subd. (b).)

We review de novo whether a party has standing. (*A.J. Fistes Corp. v. GDL Best Contractors, Inc.* (2019) 38 Cal.App.5th 677, 687.)

11

*B. Membership Requirements Under the Bylaws*

Here, defendants do not dispute section 5142 authorizes members of a corporation to bring an action for breach of a trust or that plaintiffs satisfied the requirements of section 5710. Indeed, the parties stipulated plaintiffs complied with the requirements of section 5710, subdivision (b)(2). Instead, defendants argue plaintiffs lack standing under the Corporation's bylaws. According to defendants, the bylaws required an individual to apply for membership and to be admitted as a member by approval of the Board or a committee designated by the Board. Defendants also claim the bylaws allowed the Board to issue certificates of membership. Because plaintiffs did not apply for membership and did not have certificates of membership, defendants insist they were not members with standing.

1. The Inadequate Record on Appeal

Although the bylaws were admitted as a trial exhibit, defendants did not identify any trial exhibits in their designation of the record and have not otherwise transmitted any exhibits to this court. (Cal. Rules of Court, rules 8.224, 8.122(b)(3)(B).)[4] Defendants also do not cite any portion of the record when discussing the bylaws. Indeed, they provide no relevant citations to the record to support any of their standing arguments. "A fundamental principle of appellate law is the judgment or order of the lower court is presumed correct and the appellant must affirmatively show error by an adequate record." (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178.) Because defendants bear the burden of providing an adequate record

---

[4] All further references to rules are to the California Rules of Court.

12

affirmatively demonstrating error, we cannot evaluate defendants' contention. (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1200.)

Relying on rule 8.204(d), defendants attempt to remedy the inadequate record by attaching a copy of the bylaws to their reply brief. But rule 8.204(d) does not authorize consideration of materials missing from the appellate record. (Rule 8.204(d) ["A party filing a brief may attach copies of *exhibits or other materials in the appellate record . . . .*"], italics added.) In any event, defendants appear to have attached an incomplete copy of the bylaws with missing pages. For these reasons, we consider the argument forfeited.

2.  Membership Application and Certificates Under the Bylaws

Even if we were to consider the document attached to defendants' reply brief as the operative bylaws, defendants' standing argument fails on the merits. According to the bylaws, the Corporation has two types of members. First, "*honor membership* is granted for those who are 70 years old (or older) and to those who have done a great achievement or contributed a great deal for the construction of the Corporation (church) and being proposed by the Board." (Italics added.) Second, "*active membership* is reserved for those who are actively engaged in building and maintaining the Corporation (church) by donating a regular contribution either by money or by their own work." (Italics added.) Each member has voting rights.

The bylaws further indicate: "[B]elievers . . . will be eligible to apply and to be admitted to membership in the Corporation by the approval of the Board or a committee designated by the Board to handle such matters. The Board or a Board-designated committee may adopt and amend application procedures and qualifications for membership in the Corporation. An Affirmative vote of the majority of the Directors or a Board-designated committee present and voting is required for admitting any applicant who

13

meets the membership qualifications then in effect." As to certification, the bylaws state: "The Board may provide for issuing certificates evidencing membership in the Corporation. When a person has been admitted as a member and has paid any required fee and dues, the Corporation will issue a membership certificate to the person . . . ."

Here, defendants do not claim plaintiffs cannot satisfy the requirements of being an honor member or active member. Rather, they insist plaintiffs were not members because they had not "gone through the membership application process or received certificates of membership." To the contrary, there was evidence a few plaintiffs had received certificates of membership. Regardless, the bylaws contain permissive language: "The Board *may provide* for issuing certificates evidencing membership in the Corporation." (Italics added.) This language does not suggest a person could not be a member without a certificate. With respect to an application process, the bylaws authorize the Board or a Board-designated committee to approve and vote on applicants for admission to membership. But the bylaws again use permissive language: the Board or a Board-designated committee "*may adopt and amend application procedures* and qualifications for membership." (Italics added.) At trial, there was evidence defendants did not consistently use a formal application process. In fact, the Board never held a meeting to vote on admitting new members or created a committee to do so since 2010. At one point, the Board was "begging" people to join as new members. And the Board allowed nonmembers to vote in Board elections despite the bylaws because the Board "follow[ed] whatever practices from [their] predecessors." On this record, the bylaws do not support defendants' contention that plaintiffs lacked standing as members.

14

## C. *Membership Due to Plaintiffs' Service on Committees*

Defendants further contend the trial court erred by finding some plaintiffs had standing due to their service on religious committees. According to defendants, the trial court "said that because the status was religious, it was not able to question it or deny it." Once again, defendants do not cite to any portion of the record reflecting this holding, and the statement of decision does not appear to include the reasoning defendants ascribe to it. An appellant's brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (rule 8.204(a)(1)(C).) The longer and more complex the record is, the more strictly a court will hold an appellant to that duty. (*Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 290.) It also is not the task of this court to search through a voluminous record to find evidence that supports a statement in an appellate brief. (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 745.) We accordingly disregard any argument based on plaintiffs' service on committees due to noncompliance with rule 8.204(a)(1)(C).

## D. *Effect of the Prior Writ Proceedings*

In 2022, some of the plaintiffs filed a petition for writ of mandate compelling inspection and copying of the Corporation's books and records. Another judge granted the petition and held the plaintiffs were members authorized to inspect the records. Relying on this prior ruling, plaintiffs assert defendants are precluded from litigating whether they are members. We need not address plaintiffs' collateral estoppel argument because defendants have not otherwise identified any grounds for reversal.

## II.

### THE COURT PROPERLY PLACED THE BURDEN TO ACCOUNT FOR FINANCIAL

15

TRANSACTIONS ON THE CORE BOARD DEFENDANTS

Defendants next assert the court improperly imposed the burden of proof on the Core Board Defendants in finding them liable on the accounting cause of action. They note plaintiffs argued the burden to render an accounting was on the fiduciary, and "[t]he case was litigated on the basis that if [defendant] Thanh Truong could not detail to the penny an expenditure, he was charged for it, along with [two other board members]." Defendants also assert the court "short-circuited the trial" by not ordering an accounting. We disagree with defendants' contentions. The court did not err by requiring them to account for various financial transactions.

*A. Relevant Background*

In its statement of decision, the court held the Core Board Defendants had the burden of accurately accounting for the Corporation's funds because they were fiduciaries of the Corporation and its members. The court emphasized: "The only means of determining the amount due to the Corporation is through an accounting from the Core Board Defendants as they were the ones who controlled and maintained the Corporation's funds and thus, the ability to prepare accurate and complete records of the Corporation's finances." The court noted the Core Board Defendants did not produce complete financial records and only produced documents the court determined were made in anticipation of litigation. The court then concluded the Core Board Defendants failed to present any credible evidence to satisfy their burden.

The court also denied the Core Board Defendants' request for the appointment of a forensic accountant to review records and provide an accounting. The court noted the Core Board Defendants made this request

16

after the court had already issued its ruling on liability and never raised the issue prior to the close of evidence.

## B. The Burden of Proof

The burden of proving an issue generally lies with the party for whom the existence or nonexistence of the disputed fact is essential. (Evid. Code, § 500). But the "burden of proof may change or shift where there is a greater or almost exclusive availability of evidence to one party." (*Phillip D. Bertelsen, Inc. v. Agricultural Labor Relations Bd.* (1992) 2 Cal.App.4th 506, 517.) "'In determining whether the normal allocation of the burden of proof should be altered, the courts consider a number of factors: the knowledge of the parties concerning the particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or nonexistence of the particular fact.'" (*Webster v. Trustees of Cal. State University* (1993) 19 Cal.App.4th 1456, 1463; see *National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.* (2003) 107 Cal.App.4th 1336, 1346–1347.)

Here, the derivative plaintiffs brought an accounting action, which has two elements: (1) "'a relationship . . . between the plaintiff and defendant that requires an accounting'"; and (2) "'some balance . . . due . . . that can only be ascertained by an accounting.'" (*Sass v. Cohen* (2020) 10 Cal.5th 861, 869.) Plaintiffs met their initial burden of establishing a basis for accounting relief. Among other things, they presented evidence defendant Truong commingled the Corporation's money with his personal accounts and kept other Corporation funds at his home. Defendant Truong also acknowledged he deducted certain expenses of the Corporation twice, which meant the Corporation's funds were not properly accounted for in the

17

financial records. Plaintiffs further presented evidence that appropriate documentation was lacking for $144,000 of the Corporation's funds, which was supposedly used to purchase cemetery plots. Finally, there was evidence the Core Board Defendants did not produce appropriate records detailing how much money the Corporation generated from the sale of food and donations or how much money was given to defendant Truong.

It also is undisputed the Core Board Defendants had a fiduciary relationship with the Corporation and plaintiffs. (§ 5231, subd. (a) [a director must perform his or her duties in good faith and "in a manner that director believes to be in the best interests of the corporation and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances"].) They handled the Corporation's affairs and were entrusted to manage its funds. They therefore owed a fiduciary duty to account for the Corporation's funds. This is particularly so because "the defendant in an accounting action possesses information unknown to the plaintiff that is relevant for the computation of money owed." (*Sass v. Cohen, supra*, 10 Cal.5th at p. 869.) The court accordingly did not err by requiring the Core Board Defendants to account for questionable financial transactions.

Although defendants claim the court erred by not appointing a forensic accountant, they cite no law, and we are aware of none, requiring appointment of an independent forensic accountant after a court has already issued its decision on liability. Trial began in August 2024, and the defendants requested the court appoint an accountant four months later in December 2024. The court could reasonably conclude a belated request for appointment of a forensic expert would unnecessarily prolong proceedings rather than aid resolution of the accounting issues before it. (Evid. Code, §

18

730 [allowing, but not requiring, appointment of experts]; *Hulbert v. Cross* (2021) 65 Cal.App.5th 405, 417 [trial court has discretion in choosing whether to appoint experts].)

## III.

### DEFENDANTS DO NOT IDENTIFY ANY ERROR IN THE DAMAGES AWARD

Defendants further argue there is no proof they misspent any funds. In other words, they suggest the court's award of $916,117.46 in damages was not supported by substantial evidence. Viewing the evidence in the light most favorable to the judgment, substantial evidence supported the damages award.

### A. Applicable Law and Standard of Review

The amount of damages awarded is generally ""'a fact question . . . [and] an award of damages will not be disturbed if it is supported by substantial evidence.""' (*Madani v. Rabinowitz* (2020) 45 Cal.App.5th 602, 610.) We view the entire record in the light most favorable to the judgment, resolve all evidentiary conflicts in favor of the decision, and draw all reasonable inferences in favor of the decision. (*Garcia v. Myllyla* (2019) 40 Cal.App.5th 990, 1000.)

### B. Substantial Evidence

Here, the trial court detailed how it calculated the $916,117.46 damages award. This sum consisted of: (1) $144,000 misappropriated through the cemetery transaction; (2) $204,900 in improperly advanced legal fees and costs; (3) $151,094.82 for the double deductions; (4) $224,607.73 of the Corporation's funds that defendant Truong improperly withdrew from his savings account; (5) $33,876.47 remaining in defendant Truong's savings account after the Corporation purchased land in 2020; (6) $36,750 from defendant Truong's checking account that was reported in the Corporation's

19

2021 financial statement, and (7) $120,888.44 that defendant Truong transferred into his bank account after the Core Board Defendants represented that he was no longer involved in maintaining the Corporation's funds.

Defendants do not identify any error in the court's calculations. Instead, they challenge the factual findings supporting those calculations and offer alternative interpretations of the evidence. For example, they acknowledge defendant Truong was a poor bookkeeper and should not have commingled funds, but they insist this does not mean he embezzled the Corporation's funds. The court considered and rejected this explanation based on the evidence and its credibility determinations. It is not our role to reweigh the evidence or reassess the court's credibility determinations. (*Orange Catholic Foundation v. Arvizu* (2018) 28 Cal.App.5th 283, 292.)

Defendants also complain that no witness testified about the cemetery business or whether the cemetery plots should have been purchased directly from the cemetery. Plaintiffs were not required to present such testimony to establish misappropriation. The trial court relied on the evidence before it, including the form of payment, the absence of any contractual documentation, and its assessment of defendants' credibility.

Defendants next contend the court erred by not accounting for defendant Truong's wife's income, which they suggest was deposited into the same account where defendant Truong commingled his income and the Corporation's funds. But defendants cite no portion of the record demonstrating the amount of the wife's income or that the court excluded the income from its consideration. We do not consider factual assertions unsupported by citations to the record. (rule 8.204(a)(1)(C).) In any event, it appears the court did consider the wife's income. At the end of trial, the court

20

stated: "[W]hen this court tried to ascertain all of the sources of income or revenue that went into the . . . personal account, we know it's from the cash on hand, *we know it's from the automatic wages of Mr. Truong's wife, and himself*, and we also know that there were some transfers from a credit union." (Italics added.)

Finally, defendants argue the court erred by including the attorney fees and costs they incurred to defend themselves as part of the damages award. They insist corporate funds may be used to defend a religious corporation. The court, however, found the payments were not legitimate corporate defense costs but improper expenditures of funds for defendants' personal legal representation in litigation concerning their breaches of fiduciary duty. The court further noted the Corporation's bylaws prohibited advancing expenses to a person accused of improperly receiving a personal benefit or of willful misconduct. These findings support the court's holding that the legal expenses were not permissible corporate expenses.

In short, defendants do not establish any error in the trial court's damages calculations or underlying findings. They instead ask us to accept alternative explanations for the evidence and to disregard the court's credibility determinations, which we may not do.

IV.

THE COURT DID NOT ERR BY FINDING DEFENDANTS LIABLE FOR DEFAMATION

Defendants contend there was no actionable defamation because their statements did not directly accuse plaintiff Bui of being a communist, and were truthful or otherwise unactionable. Not so. Defendants' statements were actionable.

21

*A. Relevant Background*

The court found defendants liable for the defamation of plaintiff Bui but not the other plaintiffs. In doing so, the court relied on several false statements. First, the court noted defendants posted a document on temple grounds that claimed plaintiff Bui was an elected official for the Communist Governing Council called Hoi Dong Chuong Quan (HDCQ) in Vietnam.

Second, at a meeting on temple grounds, defendant Chut Van Le again stated plaintiff Bui was an elected official of HDCQ. Defendants were present at the meeting and "stood behind these statements."

Third, in an interview with a journalist, defendant Hoa stated the Vietnamese communists sent plaintiffs to steal the temple. He also called on Cao Dai believers to boycott plaintiffs. Although defendant Hoa did not mention plaintiff Bui by name, he stated the "music director" was sent to cause problems. The interview was posted on YouTube.

Fourth, at a press conference, defendant Hai Tran displayed a photograph of plaintiff Bui with HDCQ noted underneath the photograph. He said plaintiff Bui had a group of people causing disruption at the temple. Defendant Chut Van Le likewise called plaintiff Bui a "disrupter" who organized people to cause problems at the temple, and defendants' attorney stated plaintiffs were criminals and communist agents.

Relying on these statements, the court concluded the Corporation's members and Cao Dai followers "reasonably understood the publication to mean [plaintiff] Bui was . . . a member of the HDCQ, which . . . was controlled by the communist government in Vietnam, and that he was sent by this infiltrated communist outfit to infiltrate and to steal [the Corporation]." The court further held defendants did not present any evidence the statements were true and instead relied on inadmissible

22

evidence amounting to "speculation and innuendo."

## B. Applicable Law

"""""The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage."""" (*Hoang v. Tran* (2021) 60 Cal.App.5th 513, 531–532.) The speaker must have acted negligently where the plaintiff is a private figure. (*Comedy III Productions, Inc. v. Gary Saderup, Inc.* (2001) 25 Cal.4th 387, 398.) Defamation can take the form of either libel or slander. (Civ. Code, § 44.) Libel is written or depicted defamation. (Civ. Code, § 45.) Slander is verbal defamation. (Civ. Code, § 46.)

To determine if a statement is defamatory, courts consider what is explicitly stated as well as insinuations and implications reasonably conveyed by the statement. (*Issa v. Applegate* (2019) 31 Cal.App.5th 689, 703.) "The 'pertinent question' is whether a 'reasonable fact finder' could conclude that the statements 'as a whole, or any of its parts, directly made or sufficiently implied a false assertion of defamatory *fact* that tended to injure' plaintiff's reputation." (*Ibid.*)

## C. Actionable Statements

Defendants focus on isolated words, arguing they never expressly called plaintiff Bui a communist, merely expressed concern about his training in a communist country, believed their statements were true, and advocated for a boycott. The trial court, however, was entitled to consider the statements as a whole. Those statements identified plaintiff Bui as an elected official of a communist organization from Vietnam, accused plaintiffs of being communist agents who were sent over to steal the temple, and claimed the music director (plaintiff Bui) was sent over to cause problems at the temple. Viewed collectively, the statements conveyed more than mere concern about

23

plaintiff Bui's training. The court could reasonably find they communicated factual assertions that plaintiff Bui was affiliated with a communist organization and had been sent by that organization to take over or steal from the temple. (*Lam v. Ngo* (2001) 91 Cal.App.4th 832, 850 ["the word 'Communist' has some real sting in the Vietnamese community in Orange County, California"].)

Defendants insist their statements were true because plaintiff Bui received his music director title from the HDCQ and caused disruptions at the temple. But they point to no evidence indicating plaintiff Bui was, in fact, an elected official of the HDCQ or a communist agent. Indeed, plaintiff Bui testified he was not associated with the communist party in Vietnam or an elected official of the HDCQ. He left Vietnam because he did not want to live under the communist regime. The trial court found plaintiff Bui's testimony to be credible and expressly found defendants' contrary assertions to be speculative. We defer to the court's credibility determinations, and the court's findings are otherwise supported by substantial evidence.

V.

THE JUDGMENT DOES NOT PERMIT A PERSONAL RECOVERY ON THE DERIVATIVE CLAIMS

Finally, defendants argue the judgment is an improper personal judgment in plaintiffs' favor even though five of the causes of action were derivative claims on behalf the Corporation. Defendants contend "plaintiffs would receive the money without any obligation to the [C]orporation." Defendants misconstrue the judgment.

The judgment states: "On Derivative Plaintiffs' claim for Breach of Fiduciary Duty, JUDGMENT is entered on the merits in favor of Plaintiffs and against Defendants . . . ." The judgment uses the same language for the

24

other derivative causes of action, differing only in its identification of the particular claim (constructive trust, waste of corporate assets, accounting, and removal of directors).

Defendants appear to focus on the second part of the sentence—judgment is entered in favor of plaintiffs.[5] But defendants ignore the first part of the sentence, which notes recovery is "[o]n Derivative Plaintiffs' claim[s]." The caption of the judgment also identifies plaintiffs as acting derivatively on behalf of the Corporation as well as individually. The judgment further notes the derivative plaintiffs have standing as members of the Corporation to pursue derivative claims, and it indicates the derivative plaintiffs are the prevailing parties entitled to costs and attorney fees. Finally, the statement of decision confirms the trial court awarded damages on the derivative claims to the derivative plaintiffs on behalf of the Corporation. The statement of decision states: "[T]he Corporation has been harmed to the value of $916,117.46 through misappropriation, inaccurate or no accounting." For these reasons, the judgment does not improperly award damages on the derivative claims in plaintiffs' individual favor.

For the first time in their reply brief, defendants argue the Corporation has a newly elected board of directors that should be in control of the judgment. At oral argument, defendants' counsel also argued the new board of directors should be able to investigate the damages identified in the judgment, determine if those damages should be charged against defendants, and possibly convince the superior court that there was a partial or complete satisfaction of the judgment. We do not address arguments raised for the first

---

[5] Once again, defendants do not cite to relevant portions of the record or reference the pertinent language of the judgment.

time in a reply brief or at oral argument. (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 559; *New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1098.) Even if we considered these arguments, we would reject them. Defendants already had their opportunity at trial to present evidence of whether the damages should be charged against them. The court determined the issues against them. A new board of directors cannot now ignore the court's judgment.

DISPOSITION

The judgment is affirmed. Plaintiffs shall recover their costs incurred on appeal.

SANCHEZ, ACTING P. J.

WE CONCUR:


GOODING, J.


SCOTT, J.

26